Affirmed and Memorandum Opinion filed April 14, 2009








Affirmed and Memorandum Opinion filed April 14, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00613-CR

____________

 

JUAN FUENTES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 114th
District Court  

Smith County, Texas

Trial Court Cause No. 114-0296-07

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Juan Fuentes, appeals his conviction for
engaging in organized criminal activity while committing burglary of a
habitation for which he was sentenced to 50 years in prison and fined $5,000. 
In four issues, appellant contends that: (1) the trial court erroneously
admitted extraneous offense evidence; (2) the trial court erroneously denied
his motion for directed verdict; and (3) the evidence is legally and factually
insufficient to sustain his conviction.  We affirm.








I.  BACKGROUND

This case involves allegations that appellant engaged in a
gang-related burglary.  Viewed in the light most favorable to the jury=s verdict, the
evidence shows that appellant is a member of the Nortenos, also known as the
Northside Bloods, a gang that continuously engages in criminal activity.  Prior
to the instant offense, appellant and other members of the Nortenos were
jointly arrested for various crimes.  On November 21, 2003, appellant and four
other gang members were detained at a local park that is frequented by gang
members.  Officer Scott Behrend of the Tyler Police Department testified that
he observed all five men fully clothed in red, a color favored by the
Nortenos.  Officer Behrend further testified that during the detention,
appellant acknowledged that he was a member of the Nortenos and that his gang
name was APelon.@ Appellant was arrested that night for
possession of marijuana and unlawfully carrying a weapon.  

On January 22, 2004, appellant was arrested for burglary of
a habitation.  Deputy Clifton Hunter of the Smith County Sheriff=s Department
testified that he was responding to a call regarding the suspicious activity of
two men when he made contact with appellant and Jose Martinez, also known to be
a member of the Nortenos.  Both men were dressed in red clothing and were ultimately
arrested for burglarizing a nearby house.  On September 1, 2005, Officer Donald
Michael Saxion of the Tyler Police Department responded to a call for an
automobile burglary in process.  He eventually stopped a vehicle driven by
appellant; Emigeio Cervantes, another member of the Nortenos, was riding in the
passenger=s seat.  Officer Saxion discovered marijuana and a
stolen stereo in the vehicle.  Both men were arrested that night, and appellant
was charged with burglary of an automobile. 








The current offense occurred on December 8, 2006, when two
intruders entered the house of Jose Arceaga and his fiancé, Ymeldi Aguilar. 
Aguilar=s teenage daughter,
V.A., was at home lying in bed when she heard intruders enter the house.  V.A.
testified that she heard the intruder=s footsteps first
enter her mother=s bedroom and then throughout the house. 
Shortly thereafter, V.A. observed two men enter her bedroom and rummage through
her belongings.  V.A. testified that she recognized the first intruder as
appellant and asked the two men, AWhat are y=all doing.@  Alarmed by V.A.,
the second intruder fled the house, but appellant stood still for a short
moment and made eye contact with V.A.  Appellant fled seconds later. 

A neighbor across the street, Alejandrina Perez, testified
that she saw two men, one of whom she identified as appellant, acting
suspiciously outside Arceaga and Aguilar=s house around the
same time that the house was ransacked.  Alejandrina testified that she saw
appellant peeking into the house through a window and that he was trying to
open the front door.  The second suspect was walking from the backyard towards
the front of the house.  Concerned with the two men=s suspicious acts,
Alejandrina opened her front door, making herself visible to the two men. 
Appellant and the other suspect immediately ran away.  Alejandrina=s sister, Rebecca
Perez, also testified that she saw appellant running away from the same area
around the same time.  Rebecca was driving in the neighborhood towards
Alejandrina=s house when she observed appellant, who was partially
dressed in red clothing, and the another unidentified man running away from the
area.      

The police later arrived, and witnesses described their
observations to the officers.  Appellant was identified as one of the suspects,
while the second suspect remained unidentified.  Arceaga and Aguilar also
discovered that certain pieces of jewelry were missing from their house,
including Arceaga=s necklace and rings.  Appellant was
subsequently charged with engaging in organized criminal activity while
committing burglary of a habitation.  Appellant pleaded not guilty to the
indictment, and the case was tried to a Smith County jury. Appellant was found
guilty of the charged offense, and his sentence, enhanced with a prior felony,
was assessed at 50 years in prison and a $5,000 fine.  In four issues,
appellant contends that: (1) the trial court erroneously admitted extraneous
offense evidence; (2) the trial court erroneously denied his motion for
directed verdict; and (3) the evidence is legally and factually insufficient to
sustain his conviction.








II.  SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant challenges the denial of his
directed verdict.  We treat a complaint concerning a trial court=s failure to grant
a motion for an instructed or directed verdict as a challenge to the legal
sufficiency of the evidence.   Williams v. State, 937 S.W.2d 479, 482
(Tex. Crim. App. 1996); Grantham v. State, 116 S.W.3d 136, 143 (Tex. App.CTyler 2003, pet.
ref=d).  Because
appellant challenges the legal sufficiency of the evidence in his third issue,
we address issues two and three together.  In a legal sufficiency review, we
view all the evidence in the light most favorable to the verdict and determine
whether a rational jury could have found the defendant guilty of all the
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Williams v. State, 270 S.W.3d 140, 142 (Tex.
Crim. App. 2008).  The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given to their testimony.  Lancon v. State,
253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  Reconciliation of conflicts in the
evidence is within the exclusive province of the jury.  Dudley v. State,
205 S.W.3d 82, 86 (Tex. App.CTyler 2006, no pet.).   We must resolve
any inconsistencies in the testimony in favor of the verdict.  Curry v.
State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In his fourth issue, appellant challenges the factual
sufficiency of the evidence.  In a factual sufficiency review, we review all
the evidence in a neutral light, favoring neither party.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask (1) whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the jury=s verdict seems clearly wrong and manifestly unjust,
or (2) whether, considering the conflicting evidence, the jury=s verdict is
against the great weight and preponderance of the evidence.  Id. at
414‑15, 417; Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim.
App. 2006).








A person commits the offense of engaging in organized
criminal activity if, with the intent to establish, maintain, or participate as
a member of a criminal street gang, he commits or conspires to commit one of
several enumerated offenses, one of which includes burglary of a habitation. 
Tex. Penal Code ' 71.02(a)(1).  ACriminal street
gang@ means Athree or more
persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities.@  Id. ' 71.01(d).  Appellant
contends that the evidence is both legally and factually insufficient to
support the jury=s finding that he: (1) is a member of a
criminal street gang; and (2) committed burglary of a habitation as a member of
a criminal street gang.[1] 


A.  Member of a Criminal Street Gang

Detective Chris Miller, a gang intelligence officer for the
Tyler Police Department, testified that the Nortenos is a gang that was created
in Tyler in the 1990s.  He testified that in December 2006, there were three or
more documented Nortenos, all of whom had a common identifying sign or symbol
or identifiable leadership and continuously or regularly associated in the
commission of criminal activities.  Detective Miller further explained that the
Nortenos commit various crimes, including homicides, robberies, burglaries,
retaliations, graffiti, assaults, and thefts and that such criminal activity is
the Acommon denominator@ keeping the gang
together.   Based on these factors and others, Detective Miller opined that the
Nortenos is a criminal street gang.  See Curiel v. State, 243
S.W.3d 10, 17B18 (Tex. App.CHouston [1st
Dist.] 2007, pet. ref=d) (reasoning that officer=s testimony
describing a particular gang as Athree or more
persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities@ was sufficient to establish that the gang
met the definition a Acriminal street gang@ under the Penal
Code); Muniz v. State, No. 09-97-00317-CR, 1999 WL 22634, at *2 (Tex.
App.CBeaumont Jan. 20,
1999, pet. ref=d) (per curiam) (not designated for publication). 
Accordingly, we conclude that the evidence sufficiently establishes that the
Nortenos meet the definition of a criminal street gang.  








The evidence further supports the State=s contention that
appellant was a member of the Nortenos at the time of the offense.  Detective
Miller testified that appellant had distinctive tattoos identifying appellant
as a member of the Nortenos and dressed in red clothing, a color favored by the
Nortenos.  See Sierra v. State, 266 S.W.3d 72, 78 (Tex. App.CHouston [1st
Dist.] 2008, no pet.) (membership established by appellant=s tattoos that had
distinctive meanings and were common in the criminal street gang); Hunter v.
State, No. 12-06-00434-CR, 2008 WL 4117218, at *4 (Tex. App.CTyler Sept. 3,
2008, pet. struck) (mem. op., not designated for publication) (concluding the
defendant=s tattoos identified him as being a member of a
criminal street gang). Officer Behrend and Zehren each testified that appellant
was a member of the Northside Bloods, and Officer Behrend further testified
that appellant himself had acknowledged his membership with the Nortenos. 
Officer Behrend,  Deputy Hunter, Zehren, and others testified that appellant
wore gang-related attire while committing the instant offense and other prior
offenses and associated with other members of the Nortenos while committing previous
crimes.  See Beasley v. State, 902 S.W.2d 452, 454 (Tex. Crim. App.
1995); Anderson v. State, 901 S.W.2d 946, 948B951 (Tex. Crim.
App. 1995) (membership established by defendant=s wearing of gang
attire and his association with gang members). Considering the evidence of
tattoos, association, and self-proclamation, we find that the evidence is
legally and factually sufficient to establish that appellant was a member of
the Nortenos.  

B.  Commission of Offense as a Member of a Criminal Street
Gang








Additionally, the evidence establishes that appellant
committed the instant offense as a member of a criminal street gang.  The State
was required to prove that appellant intended to establish, maintain, or
participate in the underlying offense as a member of the Nortenos.  See
Tex. Penal Code ' 71.02(a).  To that end, the State
presented evidence that appellant committed the crime in retaliation against a
rival gang, the Eastside Locos or Northside Crips.  One of the victims in this
case, Arceaga, was identified by Detective Miller as a member of a rival gang. 
Detective Miller testified that it is common practice for a gang member, such
as appellant, to commit theft or other offenses against a rival gang member in
retaliation or to move up within the hierarchy of a gang.  The evidence
presented by the State establishes that appellant committed a crime against a
rival gang member while wearing gang-related clothing, and that appellant had
participated, as a member of the Nortenos, in other criminal acts with fellow
gang members.  See Chaddock v. State, 203 S.W.3d 916, 922 (Tex. App.CDallas 2006, no
pet.) (reasoning that the State=s evidence of appellant=s association with
other gang members and engaging in a pattern of similar criminal behavior
sufficiently established that the defendant committed the instant offense as a
member of a criminal street gang).  Viewing the evidence in the light most
favorable to the verdict, we conclude that the evidence is legally and
factually sufficient to establish that appellant committed the underlying
burglary of a habitation offense with the intent to participate as a member of
a criminal street gang, the Nortenos. 

We overrule issues two, three, and four.

III.  EXTRANEOUS-ACTS EVIDENCE

In his
first issue, appellant argues that the trial court erroneously admitted three
extraneous offenses: (1) appellant=s arrest on November 21, 2003 for
possession of marijuana and unlawfully carrying a weapon; (2) appellant=s arrest on January 22, 2004 for
burglary of a habitation; and (3) appellant=s arrest on September 1, 2005 for
burglary of an automobile.  Appellant contends that these extraneous offenses
were inadmissible under rules of evidence 403 and 404(b). 

A. 
Standard of Review








Extraneous-acts
evidence is admissible if it is relevant to a fact of consequence in the case,
and the probative value of the evidence is not substantially outweighed by
unfair prejudice.  Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App.
2005). Evidence is relevant if it has Aany tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.@  Tex. R. Evid. 401.  Evidence of Aother crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith.@  Tex. R. Evid. 404(b).  Character conformity evidence that
has no relevance beyond a tendency to show the defendant is a bad person or of
a character from whom criminal conduct might be expected is inadmissible.  Casey
v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); Arroyo v. State,
239 S.W.3d 282, 288 (Tex. App.CTyler 2007, pet. ref=d).  However, evidence of extraneous
crimes, wrongs or acts is admissible under rule 404(b) if it tends in logic and
common experience to serve some purpose other than character conformity to make
the existence of a fact of consequence more or less probable than it would be
without the evidence.  Montgomery v. State, 810 S.W.2d 372, 387 (Tex.
Crim. App. 1990) (op. on reh=g).  Rule 404(b) also provides that extraneous-acts evidence
may Abe admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident.@  Tex. R. Evid. 404(b).  This list is
illustrative rather than exhaustive.  Johnston v. State, 145 S.W.3d 215,
219 (Tex. Crim. App. 2004).  Extraneous-acts evidence may also be admissible to
rebut a defensive theory.  Moses v. State, 105 S.W.3d 622, 626 (Tex.
Crim. App. 2003).  

If a
trial court determines that extraneous misconduct evidence is not barred under
rule 404(b), it may still be inadmissible under rule 403.  Relevant evidence is
properly excluded under rule 403 when its probative value is substantially
outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403. Courts should
balance the following factors under a rule 403 analysis: (1) the strength of
the evidence in making a fact more or less probable; (2) the potential of the
extraneous offense evidence to impress the jury in some irrational but
indelible way; (3) the amount of time the proponent needed to develop the
evidence; and (4) the strength of the proponent=s need for this evidence to prove a
fact of consequence.  Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim.
App. 1999). 








Whether
extraneous-acts evidence has relevance apart from character conformity is a
question for the trial court.  Montgomery, 810 S.W.2d at 391.  The trial
court must conclude that the evidence tends in logic and common experience to
serve some purpose other than character conformity to make the existence of a
fact of consequence more or less probable than it would be without the
evidence.  Id.   We review the trial court=s ruling under an abuse of discretion
standard and will not disturb the ruling if it is within the zone of reasonable
disagreement.  Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001).


B.  Admissibility of Extraneous Offenses

To establish appellant=s guilt in this
case, the State had to prove beyond a reasonable doubt that appellant, Awith the intent to
establish, maintain, or participate . . . as a member of a criminal street
gang,@ committed
burglary of a habitation.  See Tex. Penal Code ' 71.02(a)(1).  To
establish appellant as a member of a criminal street gang, the State had to
prove that the Nortenos consisted of Athree or more
persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associated in the commission of
criminal activities.@  Id. ' 71.01(d).  The
extraneous offenses admitted in this case tended to Amake the existence@ of a fact of
consequence Amore probable@ and established
that: (1) the Nortenos was a criminal street gang as defined under the Texas
Penal Code; (2) appellant had an affiliation with the Nortenos; and (3)
appellant committed the instant offense as a member of a criminal street gang,
the Nortenos.  See Canales v. State, 98 S.W.3d 690, 697 (Tex. Crim. App.
2003); Bradford v. State, 178 S.W.3d 875, 879 (Tex. App.CFort Worth 2005,
pet. ref=d). 








Moreover, the record reflects that the gang-related
evidence was relevant because it provided the motive for appellant=s burglary against
Arceaga and was not offered solely to show character conformity.   Vasquez
v. State, 67 S.W.3d 229, 239B40 (Tex. Crim.
App. 2002) (holding that gang affiliation is relevant to show a motive for a
gang-related crime).  The extraneous offenses established that appellant
committed the instant burglary against Arceaga in retaliation against a rival
gang member and to move up within the hierarchy of his gang.  See id.;
Williams v. State, 974 S.W.2d 324, 331 (Tex. App.CSan Antonio 1998,
pet. ref=d) (holding that
evidence of defendant=s gang affiliation was admissible to
establish motive for robbery).  The complained-of evidence was admissible for
purposes of determining appellant=s intent, motive,
and membership in a criminal street gang.  See Chaddock, 203 S.W.3d at
925.  Additionally, the trial court=s limiting instruction
limited the jury=s consideration of the extraneous offenses
to its proper purposes.   Accordingly, the evidence was not prohibited under
rule 404(b).  See Tex. R. Evid. 404(b).   

Furthermore, the probative force and the State=s need to admit
the extraneous offenses outweigh the factors that favor exclusion.  The
evidence was not only relevant, but essential to the State=s burden of proof. 
See Chaddock, 203 S.W.3d at 923B24.  The probative
value of the extraneous offenses was not substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence.  See Tex. R. Evid. 403; see also Gallo v. State, 239
S.W.3d 757, 762 (Tex. Crim. App. 2007) (rule 403 carries a presumption that
relevant evidence will be more probative than prejudicial).  We overrule
appellant=s first issue.

Having overruled all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Appellant does not challenge the proof relating to his commission of
the underlying offense of burglary of a habitation.